IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KENNETH JOHNSON,

  Petitioner,

v.           CASE NO. 1:13-cv-185-MP-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

  Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)  Respondent filed a response, ECF No. 13, and Petitioner filed a reply. ECF No. 15. Upon due consideration of the Petition, Response, Reply, and the state court record, the undersigned recommends that the Petition for habeas corpus relief be denied.[1]

## I. Summary of State Court Proceedings

On July 17, 2009, Petitioner pled not guilty to one count of aggravated assault with a deadly weapon, one count of aggravated battery with a deadly weapon, and one count of felony battery. (ECF No. 13-1 at

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

28.)  On September 18, 2009, a jury found Petitioner guilty on all three

counts. (*Id.* at 64–65.)[2] Petitioner was sentenced to five years on count

one, ten years on count two to run concurrent with count one, and five

years on count three to run concurrent with count one. (*Id.* at 79–81.)

Petitioner appealed his conviction, arguing that (1) trial counsel was

ineffective for failing to impeach state witnesses, failing to call witnesses on

Petitioner's behalf, and failing to object to the prosecutor's improper

comments, (2) the prosecutor committed a *Giglio*[3] violation by presenting

or failing to correct false testimony, (3) the prosecutor committed a *Brady*[4]

violation by failing to include impeachable evidence into the record that

would have negated Petitioner's guilt, and (4) the prosecutor's improper

comments during closing arguments amounted to fundamental error. (ECF

No. 13-3 at 59–74.)[5] The First DCA per curiam affirmed without opinion on

November 1, 2010. (*Id.* at 76.) Petitioner filed a motion for rehearing, which

---

[2] With respect to the felony battery charge, Petitioner stipulated to being convicted previously of misdemeanor battery. Although the jury actually found Petitioner guilty of battery, the conviction automatically increased to felony battery. (ECF No. 13-2 at 92, lines 17–25; *id.* at 93, lines 1–2.)

[3] *Giglio v. United States*, 405 U.S. 150 (1972).

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

[5] Specifically,during closing arguments the prosecutor said, "if you believe Mr. Johnson's story, well, I took off - I let off the clutch and it rolled back." (ECF No. 13-3 at 70.)

the First DCA denied. (*Id.* at 81–86.)

On February 16, 2011, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. (*Id.* at 93–98.) The circuit court, however, dismissed Petitioner's motion. (*Id.* at 101.) On March 28, 2011, Petitioner filed a successive motion for postconviction relief. (*Id.* at 120–30.) Petitioner argued that trial counsel was ineffective for: (1) failing to object to the prosecutor's comment during closing argument; (2) failing to call Petitioner's witnesses; (3) failing to cross-examine all of the state's witnesses; (4) failing to investigate and gather Petitioner's evidence; and (5) failing to act as proper counsel for Petitioner. (*Id.*) He also argued that the prosecutor engaged in prosecutorial misconduct during closing arguments. (*Id.*) The circuit court denied Petitioner's motion for postconviction relief with written opinion. (*Id.* at 132–38.)

Petitioner appealed the circuit court's denial of his motion for postconviction relief, arguing that the circuit court erred in summarily denying his motion without holding an evidentiary hearing. (ECF No. 13-4 at 43–54.) The First DCA, however, per curiam affirmed without opinion. (*Id.* at 166.) Petitioner filed a motion for rehearing, but the First DCA denied the motion. (*Id.* at 168–72.)

Petitioner filed a second motion for postconviction relief on December 3, 2012. (*Id.* at 194–97.) Petitioner presented the following arguments: (1) the trial was unfair because Petitioner's counsel asked for a judgment of acquittal but the judge allowed the state the opportunity to search for case law to support its position; (2) trial counsel was ineffective for failing to properly advise Petitioner of the possibilities of testifying on his own behalf; (3) conflict of interest in that trial counsel said there were no witnesses for Petitioner although there were; Petitioner asked trial counsel to object to the prosecutor's misstatement of facts but trial counsel did not; Petitioner asked trial counsel to file a motion to set aside the verdict but trial counsel did not; and trial counsel told Petitioner he would show Petitioner who was the attorney; and (4) the State's Exhibit 5 was tampered with. (*Id.*) The circuit court denied Petitioner's second motion for postconviction relief. (*Id.* at 199; ECF No. 13-5 at 1–3.) Petitioner appealed the denial, but the First DCA per curiam affirmed. (ECF No. 13-5 at 48, 53.) Petitioner then filed his petition for writ of habeas corpus in this Court on September 25, 2013. (ECF No. 1.)

## II.  Section 2254 Standard of Review

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim

were not considered. *Id*. at 1302, 1306.

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins*

*v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404–06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams,* 529 U.S. 362). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."

*Williams,* 529 U.S. at 412–13. "Avoiding these pitfalls [described in

*Williams v. Taylor* ] does not require citation of our cases-indeed, it does

not even require *awareness* of our cases, so long as neither the reasoning

nor the result of the state-court decision contradicts them." *Early v. Packer,*

537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state

court's decision was unreasonable must be assessed in light of the record

the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill*, the Eleventh Circuit clarified how the federal habeas court

should address the "unreasonable application of law" and the

"unreasonable determination of facts" tests. The court acknowledged the

well-settled principle that summary affirmances, such as the Florida First

District Court of Appeal's in this case, are presumed adjudicated on the

merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v.

Richter*, 526 U.S. 86 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278

F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial

opinion are not the same thing," and the Supreme Court has confirmed that

determining whether the state court unreasonably applied the law or

unreasonably determined the facts requires only a decision, not an opinion.

*Id*. at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.

*Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not

attempt to divine the lawyer's mental processes underlying the strategy."

*Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc). "No lawyer can be expected to have considered all of the ways [to

provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not
> think of at all) existed and that the lawyer's pursuit of course A
> was not a deliberate choice between course A, course B, and
> so on.  The lawyer's strategy was course A.  And [the Court's]
> inquiry is limited to whether this strategy, that is, course A,
> might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect

on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a

defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694. A "reasonable probability is defined as a probability

sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of

counsel claim on the merits, the standard a petitioner must meet to obtain

federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The

standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could

disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### III. Discussion

### A.    *Grounds One and Seven: Prosecutorial Misconduct and Ineffective Assistance of Counsel*

Petitioner claims that the prosecutor misled the jury by misstating facts during closing argument, thereby denying Petitioner due process and the right to a fair trial. Petitioner argues that the prosecutor's comment during closing argument—"if you believe Mr. Johnson's story, 'well I took off - I let off the clutch, and it rolled back"—is an inference that concludes Petitioner accidentally rolled back. Petitioner also argues that trial

counsel's failure to object to this comment denied him effective assistance of counsel, due process, and a fair and impartial trial.

Petitioner presented his prosecutorial misconduct claim on direct appeal to the First DCA.[6] The First DCA's per curiam affirmance constitutes an adjudication of the merits. Therefore, this Court's review is limited to whether the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law.[7]

The prosecutor's comment during closing argument did not constitute prosecutorial misconduct that denied Petitioner due process or a fair trial. "[A] prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "To find prosecutorial misconduct, a two-pronged test must be met: (1) the

---

[6] Although Petitioner's issue on appeal was framed as "[w]hether prosecutor's improper comments during his closing amount to fundamental error," Petitioner's argument broadly discussed being denied a fair and impartial trial. (ECF No. 13-3 at 60, 70–71.) The Court, therefore, liberally construes his claim on appeal as asserting a due process violation.

[7] Petitioner also raised this argument in his motion for postconviction relief. (ECF No. 13-3 at 126.) The circuit court held that Petitioner's prosecutorial misconduct claim was not cognizable in a motion for post conviction relief. (*Id.* at 138.) Thus, the circuit court did not address the merits of this claim in Petitioner's 3.850.

remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Muhammad v. McNeil*, 351 F. App'x 371, 375 (11th Cir. 2009) (quoting *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991)). The prosecutor's remarks did not constitute prosecutorial misconduct for the following reasons.

First, the prosecutor's comment was not an improper remark.[8] Comments are improper where they are based on pure speculation not comprised of reasonable inferences from the evidence. *Land v. Allen*, 573 F.3d 1211, 1220 (11th Cir. 2009). The prosecutor's isolated comment during closing arguments was a reasonable inference and a legitimate argument based on the evidence.[9]

Second, the remark did not substantially affect Petitioner's rights at trial. "To satisfy the second prong, the prosecutor's improper remarks must

---

[8] Petitioner says that the State conceded in it's answer to Petitioner's 3.850 that this remark was improper. However, the State's answer is not included in the record before the Court and nothing in the record demonstrates that the State conceded that the remark was improper.

[9] Petitioner testified that his car had a manual transmission, so he was idling at the stop light. (ECF No. 13-2 at 40, lines 11–18.) Trial counsel asked Petitioner, "[i]f you were to take your foot off the brake of that stick shift car, would the car potentially move forward or backwards?" (*Id.* at lines 19–21.) Petitioner answered, "[w]ell, if I don't properly conduct it right, it would call and cut off if I just took my foot off the brake." (*Id.* at lines 22–23.) The victim and the victim's fiancé also testified that Petitioner's car moved backwards toward the victim. Petitioner's trial counsel also stated during closing argument that Petitioner testified that he never put the car in reverse.

have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Conner v. GDCP Warden*, 784 F.3d 752, 769 (11th Cir. 2015) (citing *Darden*, 477 U.S. at 181).

> In determining whether arguments are sufficiently egregious to result in the denial of due process, we have considered the statements in the context of the entire proceeding, including factors such as: (1) whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial court's instructions; and (4) the weight of aggravating and mitigating factors.

*Land*, 573 F.3d at 1219–20 (citations omitted). These factors are considered under the totality of the circumstances. *Muhammad*, 352 F. App'x at 375.

As discussed, the prosecutor's comment was not improper. Because the comment was not improper, it is axiomatic that it could not have infected the trial with unfairness to result in a denial of due process.

Nonetheless, even if it is assumed that the prosecutor's comment was improper, the comment was not sufficiently egregious to result in the denial of due process. The comment was an isolated remark by the prosecutor. Although trial counsel did not object to the comment and there was no curative instruction by the trial court, there was overwhelming evidence from the victim's and fiance's testimony that a reasonable jury

could have determined established Petitioner's guilt. *See United States v. Frank,* 599 F.3d 1221, 1238 (11th Cir. 2010) ("even when error occurs, the defendant's substantial rights are not affected if the evidence sufficiently established his guilt"); *see also Land*, 573 F.3d at 1220 (prosecutorial misconduct not basis for habeas relief where no direct evidence was presented describing events that took place in victim's home but prosecutor offered improper speculated reenactment during closing arguments). Additionally, Petitioner's trial counsel stated very clearly during closing argument that Petitioner never testified that he put the car in reverse. Thus, even if the prosecutor misstated the testimony, there was argument from Petitioner's trial counsel that accurately described the testimony.

Furthermore, juries are presumed to follow jury instructions. *United States v. Calderon,* 127 F.3d 1314, 1334 (11th Cir. 1997). In this case, before closing arguments the judge, specifically admonished the jury that "what the attorneys say is not evidence." (ECF No. 13-2 at 54, line 23.) Additionally, when explaining the rules for deliberation, the judge instructed the jury, "[t]he case must be decided only upon the evidence that you heard from the testimony of the witnesses, have seen in the form of exhibits in evidence, and these instructions." (ECF No. 13-2 at 81, lines

11–14.) Even if the prosecutor's comment was improper, it is presumed that the jury understood that the prosecutor's argument was not evidence and that the case could only be decided upon the evidence.

The comment was neither improper, nor would the comment have amounted to prosecutorial misconduct if it had been improper. Petitioner was not denied the right to due process or a fair trial, and he is therefore, not entitled to federal habeas relief on his claim of prosecutorial misconduct.

With respect to Petitioner's ineffective assistance of counsel claim, because the prosecutor's comment was not improper and did not amount to prosecutorial misconduct, his trial counsel was not ineffective for failing to object to the comment. Nonetheless, even assuming, *arguendo*, that the comment was improper or amounted to prosecutorial misconduct, the record fails to show that trial counsel was ineffective for failing to object to the comment.

Petitioner presented this ineffective assistance of counsel claim in his motion for postconviction relief, which the state court denied.[10] That

---

[10] The state circuit court determined that the prosecutor was "merely submitting to the jury a conclusion that he or she was arguing could be drawn from the evidence." (ECF No. 13-3 at 133.) Further, the Court determined that the state was merely responding to the suggestion by defense during questioning that Petitioner's vehicle, which had a manual transmission, accidentally rolled back. (*Id.*) Thus, the prosecutor's

decision is entitled to double deference. Nothing suggests that the state circuit court's decision was based on an unreasonable application of clearly established federal law or an unreasonable determination of facts.

Petitioner has not shown the requisite deficient performance and prejudice as required by *Strickland*. Petitioner's argument rests on the assertion that evidence of his car accidentally rolling back was erroneous and harmful. Yet, he also argues that the central question in his case was whether he intended to put his car in reverse and harm the victim. Petitioner overlooks the fact that the prosecutor's statement—whether improper or not—was beneficial to Petitioner at trial. If Petitioner's car had accidentally rolled back while it was idling, this evidence could negate the element of intent. Thus, defense counsel had no reason to object to a theory that benefitted Petitioner. And surely, Petitioner cannot show that he was prejudiced by a comment that would have helped his case.

Accordingly, even if the prosecutor's comment was improper or amounted to prosecutorial misconduct, counsel's performance was not deficient nor was Petitioner prejudiced by the failure to object. Petitioner's

---

comment was a permissible argument. (*Id.*) Consequently, the circuit court concluded that Petitioner's trial counsel did not err by failing to object, and even if he had erred, there was no prejudice because the comment was not a feature of the state's argument. (*Id.* at 134.)

claim of ineffective assistance of counsel for failing to object provides no avenue for federal habeas relief.

## B.   Ground Two: Discovery Violation

Petitioner claims that (1) Officer Joy Robinson's investigation report differed from the report offered by the victim at trial, (2) the State knew of the differences but allowed the testimony in violation of *Giglio*, and (3) trial counsel denied Petitioner  due process by failing to object and failing to adequately cross-examine the victim. Respondent argues that this claim is unexhausted, procedurally defaulted, and without merit.[11]

The record discloses that Petitioner has properly exhausted this claim. To properly exhaust state remedies, a petitioner must fairly present the issue to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Petitioner raised this issue in his direct appeal to the First DCA, arguing that the state committed a *Giglio* violation by presenting or failing to correct false testimony. (ECF No. 13-3 at 68–69.) The First DCA per curiam affirmed without written opinion, thereby constituting an adjudication on the merits.

---

[11] Respondent does not present an argument as to why the claim is unexhausted and procedurally defaulted. A claim is procedurally defaulted when the petitioner fails to raise the claim in state court and any future attempts at exhaustion would be futile. § 2254(d).

(*Id.* at 76.)  And although Petitioner did not re-assert this claim in any of his 3.850 motions, he was not required to seek further review. *See Castille*, 489 U.S. at 350 (a petitioner need not seek state collateral relief on the same issue where the state court has ruled upon a claim on direct appeal to satisfy the exhaustion requirement). Petitioner properly exhausted this claim in state court and, therefore, the claim is not procedurally defaulted.

As to the merits of Petitioner's claim, Petitioner says that because the state knew the victim's testimony differed from Officer Robinson's report describing the victim's recitation of the incident, the state knowingly allowed false testimony to be presented at trial. Nothing suggests, however, that the First DCA's decision was contrary to, or involved an unreasonable application of federal law.

A *Giglio* violation "occurs where the undisclosed evidence reveals that the prosecution knowingly made false statements or introduced or allowed trial testimony that it knew or should have known was false." *Smith v. Sec'y, Dep't of Corrections*, 572 F.3d 1327, 1333 (11th Cir. 2009) (citing *United States v. Agurs*, 427 U.S. 97, 103–04 (1976); *Giglio*, 405 U.S. at 153; *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995)). "To prevail on a *Giglio* claim, a petitioner must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he

subsequently learned was false testimony; and (2) such use was material."

*Id.* at 1334 (quoting *Ford v. Hall*, 546 F.3d 1326, 1331–32 (11th Cir.

2008)).

The record does not suggest that the prosecutor knowingly used

perjured testimony or failed to correct what he later learned was false

testimony. A *Giglio* violation requires that "[t]he testimony or statement

elicited or made must have been a false one." *Hammond v. Hall*, 586 F.3d

1289, 1307 (11th Cir. 2009) (citing *Smith,* 572 F.3d at 1335 ("Accurate

statements do not violate the *Giglio* rule.")).

In this case, the victim's testimony at trial was virtually identical to

that in the police report. The only differences Petitioner points to are: (1)

the victim did not testify that he was trapped between Petitioner's vehicle

and the parked vehicle,[12] (2) the victim testified that bikers stay as far to

---

[12] In the victim's statement to police, the victim stated that Petitioner put the
vehicle in reverse, which the victim knew because he saw the white reverse lights come
on. (ECF No. 13-3 at 73.) When Petitioner proceeded to back up until the back bumper
of his vehicle struck the front tire of the victim's bicycle, the victim began backing his
bicycle up and backed into a legally parked vehicle. (*Id.*) The victim was then "trapped"
between Petitioner's vehicle and the parked vehicle. (*Id.*) At trial, the victim testified that
Petitioner turned around as someone would do backing their car up, the reverse lights
came on, and the car started coming backwards towards the victim. (ECF No. 13-1 at
154, lines 10–14.) The victim testified that as the car began backing up toward him he
started walking his bike backwards. (*Id.* at 155, lines 7–12.) Petitioner's car struck the
front tire of the victim's bike while the victim was still on the bike, which made the
handle bars turn. (*Id.* at 156, lines 5–22.)

the right when there are no bike lanes,[13] and (3) the victim's explanation of

how Petitioner backed his car up was slightly different.[14] None of these

alleged disparities amount to false testimony.  Neither elaborating on facts

at trial, nor a different interpretation of facts amounts to false testimony or

a failure by the state to correct false testimony.  As such, there is no *Giglio*

violation.

Even assuming, *arguendo*, that the victim's testimony was false or

that the prosecutor failed to correct the false testimony, this would not

amount to a *Giglio* violation because the use would not have been material.

In this case, whether or not the victim was "trapped" between Petitioner's

vehicle and the parked vehicle was irrelevant to the charges.[15] The victim's

---

[13] At trial the victim testified that "we stay as far to the right as practicable on roads that don't have bike lanes." (ECF No. 13-1 at 152, lines 6–7.) The police report does not contain this assertion.

[14] In the victim's statement to police, the victim stated that Petitioner stuck his head out the window, put the vehicle in reverse with the reverse lights, and proceeded to back up. (ECF No. 13-3 at 73.) At trial, the victim testified that Petitioner turned around as someone would who is backing their car up, by putting their hand on the headrest next to them and turning their head around, the reverse lights came on, and the car started coming backwards toward the victim. (ECF No. 13-1 at 154, lines 10–14.)

[15] At the time of Petitioner's conviction, aggravated assault with a deadly weapon was defined as an assault "[w]ith a deadly weapon without intent to kill, or "[w]ith intent to commit a felony. Fla. Stat. § 784.021 (2009). An assault "is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011 (2009). Aggravated battery was defined as a person who, in committing battery "[u]ses a deadly weapon." Fla. Stat. § 784.045 (2009). Battery occurs when a person "[a]ctually and intentionally touches or

testimony that Petitioner turned around like he was backing his car up, the reverse lights came on, the car came backward toward the victim, and the car hit the front wheel of the victim's bicycle, making the handlebars turn, while the victim was still on the bicycle, presents sufficient facts for a reasonable jury to conclude that the state met the elements for aggravated battery.

Additionally, the victim's testimony that bikers stay as far to the right as possible when there is no bicycle lane, is wholly irrelevant to these charges.  And whether Petitioner stuck his head out of the window or turned around and put his hand on the headrest is also irrelevant. A reasonable jury could conclude that seeing the reverse lights come on and the car moving backward toward the victim created a well founded fear in the victim that Petitioner intended to do violence to the victim, that Petitioner had the apparent ability to do so, and that such violence was

---

strikes another person against the will of the other; or . . . intentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a) (2009). Felony battery was defined as "[a] person who has one prior conviction for battery, aggravated battery, or felony battery and who commits any second or subsequent battery commits a felony of the third degree . . . ." Fla. Stat. § 784.03(2) (2009). "A deadly weapon is 1) any instrument which, when it is used in the ordinary manner contemplated by its design and construction will or is likely to cause great bodily harm, or 2) any instrument likely to cause great bodily harm because of the way it is used during a crime." *Nguyen v. State*, 858 So. 2d 1259, 1260 (Fla. 1st DCA 2003) (quotation omitted). In Florida, a vehicle can be the means of committing the battery. *Clark v. Florida*, 783 So. 2d 967, 969 (Fla. 2001). Further, the word "person" includes anything intimately connected with the person. *Malczewski v. Florida*, 444 So. 2d 1096, 1099 (Fla. 2d DCA 1984).

imminent. Thus, even if the victim's trial testimony was false, the prosecutor's use or failure to correct would not have been material, nor would it constitute a *Giglio* violation.

To the extent that Petitioner asserts ineffective assistance of counsel under this claim, Petitioner also properly has exhausted this claim. Petitioner raised this issue in his direct appeal to the First DCA, arguing that trial counsel was ineffective under the Sixth Amendment for failing to impeach the victim. (ECF No. 13-3 at 67.)   Although Petitioner asserts a "discovery violation," he nonetheless explains that his claim is based on his trial counsel's failure to "explore the disparity of the victim's testimony," thereby denying him due process. (ECF No. 1 at 8.)

Thus, while the claim here is not verbatim to that presented on direct appeal, a reasonable person would understand that the claim's legal basis and factual foundation are the same. *See Darity v. Sec'y, Dep't of Corrections*, 306 F. App'x 532, 533 (11th Cir. 2009) ("Exhaustion requirements are not so rigid as to require a verbatim restatement of the claims brought in state court, but a petitioner must present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.").

Furthermore, although Petitioner did not assert this claim in one of

his 3.850 motions,[16] this does not render his claim "unexhausted."

> Generally, ineffective assistance of trial counsel will not be congnizable on direct appeal when the issue has not been raised before the trial court. . . . . There are [however,] rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue.

*Blanco v. Wainwright*, 507 So. 2d 1377, 1384 (Fla. 1987) (citations

omitted); *see also Bogan v. Thompson,* 176 F. App'x 34, 35–38 (11th Cir.

2006) (petitioner not procedurally barred from seeking habeas corpus

review of ineffective assistance of trial counsel claims where claims were

raised and addressed on direct appeal). When the First DCA per curiam

affirmed Petitioner's conviction without written opinion, the First DCA

adjudicated the issue on the merits and Petitioner was not required to re-

assert this claim in either of his postconviction motions.[17]  Because

Petitioner properly exhausted this claim in state court the claim has not

---

[16] Petitioner attempted to raise this claim in his first 3.850 motion, but the circuit court dismissed the motion. Petitioner did not seek further review of this specific claim.

[17] Petitioner did not petition the Florida Supreme Court for discretionary review. Nonetheless, this failure also does not render his claim "unexhausted." To properly exhaust state remedies, a petitioner must file a petition for discretionary review in the state's highest court unless the state has provided that the remedy is unavailable. *O'Sullivan*, 526 U.S. at 847. The Florida Supreme Court "does not have jurisdiction to review per curiam decisions of the district courts of appeal that merely affirm." *Persaud v. State*, 838 So. 2d 529, 531–32 (Fla. 2003). Here, the First DCA *per curiam* affirmed without written opinion. Accordingly, Petitioner was not required to present his claim to the Florida Supreme Court.

been procedurally defaulted.  The Court, therefore, will address the merits of Petitioner's claim.

Petitioner contends that trial counsel's failure to explore the disparity in the victim's testimony permitted the state's witnesses to give false testimony in violation of his due process rights. This alleged failure does not rise to the level of ineffective assistance of counsel. "The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995). The test is whether the attorney's action or decision was within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Petitioner's trial counsel extensively cross examined the victim at trial.  And as previously discussed, none of the disparities in the testimony constitute false testimony.  If anything, testimony that the victim was "trapped" between Petitioner's vehicle and the parked vehicle may have made Petitioner look worse in the eyes of the jury.

In sum, there was no deficient performance in this aspect, nor could there be prejudice. The First DCA's decision was neither contrary to clearly established federal law, nor was it an unreasonable application of facts. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## C.  *Grounds Three, Five, and Six: Ineffective Assistance of Counsel*

Petitioner asserts three additional grounds of ineffective assistance of counsel: (1) failing to cross examine the state's witness, Clifford Miller; (2) failing to call Petitioner's witness; and (3) failing to gather evidence of the dent that the victim put in the trunk of Petitioner's vehicle.

### 1.   **Failing to Cross Examine Mr. Miller**

Petitioner raised this claim in his first postconviction motion, arguing that trial counsel erred by failing to cross-examine Mr. Miller because Mr. Miller did not testify that he saw Petitioner's vehicle moving in reverse. The state circuit court denied the claim, noting that "the witness did not testify as to seeing anything prior to Defendant getting out of his car and battering the victim." (ECF No. 13-3 at 204.)  Accordingly, the state circuit court held that Petitioner failed to show error or prejudice in his trial counsel's failure to cross examine Mr. Miller and the First DCA per curiam affirmed.

As the circuit court pointed out, Mr. Miller did not testify about seeing anything before Petitioner got out of his vehicle to strike the victim. Mr. Miller testified that he saw a guy and girl on their bicycles, the guy looked around at the girl, and the guy in the car in front of them jumped out of the car and started hitting the guy. (ECF No. 13-2 at 9, line 25; *id.* at 10, lines 1–3.)  Mr. Miller also testified that he did not see the bicycle hit the car.

(ECF No. 13-2 at 10, lines 22–23.)

The state court's decision is entitled to double deference. Additionally, Petitioner's trial counsel satisfied *Strickland's* deferential standard. Mr. Miller did not testify about anything prior to Petitioner getting out of his vehicle.  Based on Mr. Miller's testimony, it was reasonable to conclude that Mr. Miller would not have been able to testify about seeing the reverse lights on the vehicle.  Thus, Petitioner has failed to show that the decision not to cross examine Mr. Miller was anything other than trial strategy. Counsel's performance cannot be deficient based on a decision that was a reasonable trial strategy. *Manning v. Florida*, 373 F. App'x 933, 935 (11th Cir. 2010). Petitioner has not shown how counsel's decision resulted in error or prejudice pursuant to *Strickland*. *See Lang v. McDonough*, No. 8:05-CV-1889-T-24EAJ, 2007 WL 433454, at *3 (M.D. Fla. Feb. 6, 2007) (attorney who did not cross examine any of state's thirteen witnesses was not ineffective where petitioner failed to show that the decision was anything other than trial strategy).

Nor was Petitioner prejudiced by the decision not to cross examine Mr. Miller. Not only was it reasonable to conclude that Mr. Miller could not have offered any testimony about seeing the reverse lights on the vehicle, but Petitioner testified that he did not back the car up or put the car in

reverse.  Consequently, the jury did consider this evidence. Petitioner has, therefore, failed to show that the state court's decision was an unreasonable determination of clearly established Federal law or an unreasonable determination of facts.

Moreover, although Petitioner argues that the state court erred in summarily denying his claim instead of granting him leave to amend, this argument has nothing to do with the ineffective assistance of counsel claim he raises here.[18] Nonetheless, to the extent the Court construes this claim as also asserting a violation of due process, this argument does not provide an avenue of relief for Petitioner.

Petitioner appealed to the First DCA, arguing that the state court erred in summarily denying his claim instead of granting an evidentiary hearing. The First DCA per curiam affirmed the district court's denial. Petitioner has failed to show, however, how the First DCA's decision was contrary to clearly established federal law or an unreasonable application of facts.  And to the extent that Petitioner argues that the state court erred in applying state law, federal habeas relief is not available for purely state

---

[18] Petitioner also asserts the argument that the state court erred in summarily denying his motion instead of granting him leave to amend or an evidentiary hearing with respect to grounds four, five, and six. The Court's analysis under ground three here also applies to grounds four, five, and six.

law issues.

Further, Petitioner does not suggest—nor can he— that the state court's summary denial of this issue after trial and during postconviction proceedings, rendered his trial fundamentally unfair.

## 2. Failing to Gather Evidence

As Respondent points out, Petitioner does not identify anywhere in his petition who his trial counsel should have called as a witness. This claim, therefore, is facially insufficient.[19]

Nonetheless, this is the same argument Petitioner presented in his first motion for postconviction relief. In his motion Petitioner alleged that Tara Young was the person who was in the passenger seat of his vehicle at the time of the offense. Accordingly, the Court liberally construes this claim as asserting that his trial counsel should have called Ms. Young as a witness.

Petitioner says that Ms. Young would have refuted the testimony of the state's witnesses that the reverse lights on Petitioner's vehicle were on. The district court denied this claim on the merits, finding that Petitioner

---

[19] Respondent argues that because this claim is facially insufficient, it is also unexhausted and procedurally defaulted. While the Court agrees that it is facially insufficient, *pro se* litigants are entitled to a liberal reading of their claims. Therefore, the Court declines to deny the claim based on exhaustion and procedural default.

failed to show that the omission of the proposed testimony prejudiced him. The First DCA per curiam affirmed.

Petitioner's claim fails because Petitioner has failed to show that the state court's decision was an unreasonable determination of the facts or an unreasonable application of clearly established federal law. As the state court noted, Ms. Young's proposed testimony was the same as that provided by Petitioner's testimony. Thus, it follows that there was not a reasonable probability that Ms. Young's testimony would have affected the outcome of the trial. Not only is the state court's decision entitled to double deference, but Petitioner wholly fails to show that the state court's decision was an unreasonable determination of facts.

Petitioner also fails to show that counsel's decision not to call Ms. Young as a witness resulted in error or prejudice under *Strickland*. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters*, 46 F.3d at 1512. Moreover, "Counsel is not required to present cumulative evidence or evidence incompatible with the defense strategy." *Rhode v. Hall*, 582 F.3d 1273, 1287 (11th Cir. 2009) (citing *Van Poyck v. Fla. Dep't of Corrections*, 290 F.3d 1318, 1324 (11th Cir. 2002). Petitioner cannot establish that his counsel's performance was deficient. Because

Petitioner testified that he did not put the car in reverse, there was evidence for the jury to consider that the car was not put into reverse. Thus, Petitioner has also failed to show that he was prejudiced by counsel's decision not to have Ms. Young testify.[20]  Petitioner has not establish ineffective assistance because counsel did not call Ms. Young as a witness.

### 3. Failing to Investigate the Dent in Petitioner's Car

Petitioner says that although he told trial counsel that the victim put a dent in the trunk of Petitioner's car, counsel failed to investigate and gather evidence.

Like Petitioner's other ineffective assistance of counsel claims, Petitioner has not shown how the failure to investigate the dent was deficient performance that resulted in prejudice. The state courts considered this claim and denied it on the merits. That decision is entitled to double deference and nothing suggests that the decision was based on an unreasonable application of Supreme Court precedent or an unreasonable determination of facts.

---

[20] To the extent that Petitioner says Ms. Young would have refuted Mr. Miller's testimony that he did not see any reverse lights come on, Petitioner is wrong. Mr. Miller did not testify that he did not see any reverse lights come on. Rather, Mr. Miller did not testify about the reverse lights at all. Accordingly, there was no "reverse light testimony" by Mr. Miller for Ms. Young to confirm.

Both the victim and the victim's fiancé admitted at trial that the victim hit the trunk of Petitioner's car. "It is well-settled in this Circuit that a petitioner cannot establish an ineffective assistance claim simply by pointing to additional evidence that could have been presented." *Van Poyck*, 290 F.3d at 1324. Presenting additional evidence of a dent in Petitioner's trunk would have been cumulative and unnecessary. Trial counsel's performance, therefore, was not deficient.

Petitioner says that evidence of the dent would have shown that the victim was the aggressor and that the victim was trying to get Petitioner's attention and was not in harm's way.  But whether or not the victim put a dent in Petitioner's car when the victim hit the trunk is irrelevant to the charges.  In short, Petitioner cannot show that the failure to gather evidence of the dent prejudiced him.  Accordingly, this claim does not warrant habeas relief.

## D.   *Ground Four: Conflict of Interest*

Finally, Petitioner contends that trial counsel failed to carry out Petitioner's wishes and, therefore, his counsel did not act in good faith, trust, or confidence. Specifically, Petitioner says: (1) Petitioner asked counsel to call a witness, which he failed to do; (2) Petitioner told counsel about the dent in Petitioner's vehicle caused by the victim but counsel

failed to investigate and gather evidence; (3) Petitioner testified that he hit the victim with his fist a couple of times, which was contrary to counsel's opening statement; and (4) counsel improperly stipulated to Petitioner's prior battery conviction, which allowed Petitioner's charge to be enhanced to felony battery. Petitioner says that this "conflict of interest" violated his Sixth and Fourteenth Amendment rights.

While Petitioner uses the term "conflict of interest," in this claim the claim is not one for conflict of interest but rather ineffective assistance of counsel.  A conflict of interest arises where an attorney has inconsistent interests. *McCorkle v. United States,* 325 F. App'x 804, 808 (11th Cir. 2009) (quotation omitted). Those "inconsistent interests" include external loyalties, such as former or other current clients. *See Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980) (discussing conflicts of interest based on evidence of counsel's "struggle to serve two masters"); *Holloway v. Arkansas*, 435, 481 (1978) (noting that joint representation of codefendants could create a conflict of interest) *Porter v. Singletary*, 14 F.3d 554, 561 (11th Cir. 1994) ("An attorney who cross-examines a former client inherently encounters divided loyalties.").

In this case Petitioner's claim of conflict of interest has nothing to do with his counsel having external loyalties. Instead, Petitioner's argument is

premised on the assertion that "[t]rial counsel had a fiduciary duty to carry out the wishes of the defendant, however, in his effort to prove to the defendant that he was the attorney, trial counsel failed to perform this duty." (ECF No. 1 at 10.)  Petitioner's claim therefore is properly characterized as a claim for ineffective assistance of counsel.  Within the claim Petitioner raises four subgrounds.

In subgrounds 1 and 2 Petitioner argues that trial counsel was ineffective for failing to call a witnesses for Petitioner and for failing to gather evidence of the dent that the victim put in Petitioner's car. These grounds already have been discussed at length above and, therefore, require no further discussion.

In subground 3 Petitioner asserts that trial counsel failed to include in opening statement information that Petitioner hit the victim, which denied Petitioner the right to be represented properly and denied Petitioner the right to due process. Petitioner raised an ineffective assistance of counsel claim in the state court, claiming that trial counsel failed to act as proper counsel based on several alleged failures, including failing to say in opening statement that Petitioner hit the victim.  Petitioner says that his testimony at trial, admitting to hitting the victim, therefore, was contrary to counsel's opening statement. The state court denied the claim on the

merits, noting that the ground was "essentially a hodgepodge of claims raised under other grounds," and that "[n]one of the issues raised under this ground constitute ineffective assistance." (ECF No. 13-3 at 137.) The First DCA subsequently affirmed the state trial court's decision.

Nothing suggests that the state court's decision was an unreasonable application of facts or was contrary to clearly established federal law.  As Respondent argues, trial counsel's opening statement was vague.  At one point counsel mentioned that there was a verbal interaction and that Petitioner got back into his car and drove away.  At another point counsel said that the victim turned the interaction into a physical event. Although these statements might be somewhat contradictory, these statements do not constitute deficient performance nor did the statements establish prejudice under *Strickland*.

Defense's failure to expressly admit in opening statement that Petitioner hit the victim does not equate to deficient performance. "The purpose of an opening statement is to tell the jury what the case is about and to outline the proof." *United States v. Breedlove*, 576 F.2d 57, 60 (5th Cir. 1978). Decisions regarding opening statements are trial tactics based on strategies that are reasonable at the time. *See Harrington*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at

the time and to balance limited resources in accord with effective trial

tactics and strategies."); *United States v. Rodriguez-Ramirez*, 777 F.2d

454, 458 (9th Cir. 1985) ("The timing of an opening statement, and even

the decision whether to make one at all, is ordinarily a mere matter of trial

tactics and in such cases will not constitute the incompetence basis for a

claim on ineffective assistance of counsel.").

Other courts even have found that decisions by defense counsel to

completely waive opening argument are tactical decisions and do not

constitute ineffective assistance of counsel. *See Jones v. Smith*, 772 F.2d

668, 674 (11th Cir. 1985); *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir.

2000); *United States v. Salovitz*, 701 F.2d 17, 20–21 (2d Cir. 1983).  As the

Eleventh Circuit explained in *Jones* "[t]he attorneys' decision to waive

opening argument at the guilty phase was one of reasonable trial strategy.

It left the defense uncommited to a particular position and thus free to

develop any defense that might materialize as the State presented its

case." 772 F.2d at 674.  Similarly, in this case, trial counsel's vague

opening statement left the defense uncommited to a particular position and

free to develop a defense as the case proceeded.

In addition to failing to demonstrate deficient performance, Petitioner

failed to show how he was prejudiced by this omission.  All of the

witnesses—including Petitioner—testified that Petitioner hit the victim. This evidence was presented to the jury for deliberation. Thus, it makes no difference whatsoever that Petitioner's counsel did not also expressly say in opening statement the same thing that every witness said. In light of the fact that every witness testified that Petitioner hit the victim, had counsel also said so in opening statement would not have created a reasonable probability of a different verdict.

While Petitioner contends in his reply that the state court did not make an attempt to throughly review this claim— instead simply called it a "hodgepodge of claims"— the state trial court concluded that the issue did not constitute ineffective assistance of counsel.  The state court did, therefore, consider the issue on the merits and that decision is entitled to deference. Additionally, although Petitioner says this claim is predicated on facts not in the record, this Court is limited to reviewing facts in the record.

In subground 4 Petitioner claims that counsel improperly stipulated to Petitioner's prior battery conviction. Petitioner says that he did not authorize counsel to stipulate to the prior conviction.  As Respondent points out, Petitioner did not present this issue to the state court in his direct appeal or present the issue to the state court in either of his two postconviction motions. The state courts, therefore, did not have a

meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin*, 541 U.S. at 29.  Subground 4, therefore, is unexhausted.

Petitioner would be procedurally barred from now presenting subground 4 in state court. Under Florida law, a Rule 3.850 is the proper procedural vehicle for asserting an ineffective assistance of counsel claim. But, a Rule 3.850 motion must be initiated within two years after the judgment and sentence become final unless the defendant alleges,

> (1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence, or (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively, and the claim is made within 2 years of the date of the mandate of the decision announcing the retroactivity, or (3) the defendant retained counsel to timely file a 3.850 motion and counsel, through neglect, failed to file the motion.

Fla. R. Crim. P. 3.850(b).  None of these exceptions apply. If true, Petitioner knew that he did not authorize counsel to stipulate to the prior battery charge from the very moment the stipulation occurred. Futhermore, the right to effective assistance counsel is not a newly established constitutional right.  Moreover, Petitioner filed two 3.850 motions. Thus,

nothing suggests that the third exception would apply. Subground 4 is, therefore, procedurally barred under state law and procedurally defaulted under federal habeas law.

Petitioner also has failed to show cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default. Federal habeas review of a procedurally defaulted claim is not precluded if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Id.* at 753.

Petitioner appealed his conviction and filed two postconviction motions, asserting ineffective assistance of counsel claims. Petitioner obviously knew whether or not his counsel stipulated to the prior battery conviction. Petitioner offers no suggestion as to why this issue was not raised in the state courts.

Thus, the failure to raise this claim is wholly attributable to Petitioner and therefore Petitioner has not established cause for this default. Tthe Court, therefore, does not need to consider the prejudice prong. *See Ward*

*v. Hall*, 592 F.3d 1144 (11th Cir. 2010) ("It is well established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice.").

Finally, Petitioner has not demonstrated a fundamental miscarriage of justice. To show a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, no reasonable juror would have convicted him. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Petitioner has not pointed to any new evidence that if introduced would have demonstrated that no reasonable juror would have convicted him.

Even if the claim had been exhausted and not procedurally defaulted, Plaintiff's argument fails because Petitioner stipulated to his prior conviction at trial. The following discussion took place:

> Mr. Thompson: I think the resolution, if I'm not mistaken, is they are stipulating and agreeing that if the [jury] finds him guilty of battery on the third offense, therefore, it is a felony battery, and they're stipulating to those prior convictions, which I do have.
> Mr. Atria: That's correct, Judge. He's provided us with a certified copy of the prior judgment and sentence. Looks like it's from a case in 2006. My client's not denying that he was convicted of that misdemeanor battery charge. So we'd stipulate that he does have the prior battery conviction.
> The Court: Okay.
> Mr. Thompson: Yes, Sir.
> The Court: All right. Is that correct, sir?

The Defendant: Yes, sir.

(ECF No. 13-2 at 92, lines 17–25; *id.* at 93, lines 1–6.)  Because Petitioner
told the Court that he agreed to the stipulation his counsel did not, as
Petitioner claims, enter into a stipulation to which Petitioner did not agree.
Thus, there was no deficient performance and no prejudice. Petitioner's
claim in subground 4 therefore has no merit even if the claim had been
exhausted.  Because subground 4 is entirely without merit Petitioner is not
entitled to habeas relief on this claim.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue
or deny a certificate of appealability when it enters a final order adverse to
the applicant," and if a certificate is issued "the court must state the
specific issue or issues that satisfy the showing required by 28 U.S.C. §
2253(c)(2)." A timely notice of appeal must still be filed, even if the court
issues a certificate of appealability. Rule 11(b), Rules Governing Section
2254 Cases.

The undersigned finds no substantial showing of the denial of a
constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.
473, 483–84 (2000). Therefore, the undersigned recommends that the
district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, for the reasons discussed above, it is respectfully

**RECOMMENDED:**

1. The petition for writ of habeas corpus, ECF No. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 19th day of May, 2016.

_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**